## FORT RING OIL AND GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60096. Promulgated April 4, 1934.

*Charles D. Hamel, Esq.,* and *Lee I. Park, Esq.,* for the petitioner.
*Frank B. Schlosser, Esq.,* and *E. G. Sievers, Esq.,* for the respondent.

OPINION.

MARQUETTE: The petitioner asserts that expenditures for drilling producing oil and gas wells upon a footage basis were capital expenditures, to be included in the basis for determining the cost deductible from the sale price in ascertaining gain or loss on sale. It appears that in its returns for the fiscal years ended June 30, 1925, 1926, 1927, and 1928, it deducted the cost of drilling all wells, including the intangible cost of turnkey drilling, as well as the footage drilling. The cost of physical equipment in and about such wells was capitalized and not deducted. During the year 1929 petitioner filed amended returns for the years 1925 to 1928, inclusive, in which it treated as capital items drilling costs incurred in said years on both turnkey and footage drilling. During the fiscal year ended June 30, 1929, the petitioner sold its oil and gas wells and received therefor $142,759.95. In its return for said year petitioner treated all drilling costs as capital expenditures. The respondent has restored the turnkey drilling costs, which had been deducted, to capital and has refused to so restore to capital the footage drilling costs, deducted as expense. He relies upon the provisions of article 243 of Regulations 74 [1] as authority for such action.

The petitioner claims that no reasonable distinction exists between the expenditures for turnkey drilling and those for footage drilling; that neither constitutes " incidental expenses  *  *  *  paid for wages, fuel, repairs, hauling, etc.", within said regulation. This question has been decided adversely to the petitioner's contention

---

[1] ART. 243. *Charges to capital and to expense in the case of oil and gas wells.*—Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may at the option of the taxpayer be deducted as a development expense or charged to capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling nonproductive wells may at the option of the operator be deducted from gross income as a development expense or charged to capital account returnable through depletion and depreciation as in the case of productive wells. An election once made under this option will control the taxpayer's returns for all subsequent years. Where deductions for depreciation or depletion have either on the books of the taxpayer or in his returns of net income been included in the past in expense or other accounts, rather than specifically as depreciation or depletion, or where capital expenditures have been charged to expense in lieu of depreciation or depletion, a statement indicating the extent to which this practice has been carried should accompany the return. [Article 223 of Regulations 69, promulgated under the Revenue Act of 1926, is identical with the above regulation.]

by the Board and the courts in *Old Farmers Oil Co.*, 12 B.T.A. 203, and *Hughes Oil Co.* v. *Bass*, 62 Fed. (2d) 176; certiorari denied, 289 U.S. 726, wherein it was held that turnkey drilling costs were not within the incidental costs covered by the regulation. Consequently these costs were properly capitalized by the respondent. Development costs in the case of footage drilling stand upon a different basis and, under the regulation, the taxpayer may elect whether such costs shall be deducted as an expense or charged to capital account, returnable through depletion. This regulation has been held valid in *Sterling Oil & Gas Co.* v. *Lucas*, 51 Fed. (2d) 413; affd., 62 Fed. (2d) 951; and *Ramsey* v. *Commissioner*, 26 B.T.A. 277; affd., 66 Fed. (2d) 316; certiorari denied, 290 U.S. 673. In the last cited case the Circuit Court of Appeals discussed the scope and purpose of this regulation and, in holding it to be valid, said:

Whether an oil well is a permanent improvement is at least a debatable question. The incidental costs here involved are irretrievably gone when the well is finished, whether it be a dry hole or a producer. A dry hole is neither an improvement nor a betterment; neither is a producer after the oil is exhausted. The truth is that the hole upon which the money is expended is simply a means of reaching the oil sands, and it is the oil which increases the value of the property; the hole is of value only if oil is found, and then only as long as the sands will produce. A producing field is of more value than a nonproducing one, partly because the expenses of reaching the sands have been incurred, but largely because the presence of oil has been proven. While dictionary definitions are helpful, they do not exclude an examination of the context to ascertain the purpose of the statute, nor forbid an inquiry into administrative interpretation as an aid in construction of doubtful words or passages. A priori, therefore, we are of the opinion that the holes through which the oil is recovered are not so conclusively " permanent improvements or betterments " as to preclude a regulation permitting the deduction of irrecoverable expenses of drilling them as ordinary expenses incurred in carrying on a trade or business, allowed by Sec. 214 (a) of the acts in question.

\*       \*       \*       \*       \*       \*       \*

The industry, the Commissioner, the Board of Tax Appeals, and the courts for years have acted upon the assumption that this regulation is valid. It is a fair solution of a debatable question. If it is to be changed at this late day, it should be done by Congress and not the courts.

We must next inquire whether the petitioner exercised its option under the regulation to deduct footage contract cost as a development expense. The facts disclose that for its taxable years 1925, 1926, 1927, and 1928, in its original returns it consistently treated all drilling costs, both turnkey and footage drilling, upon the same basis, that is, as a development expense, and that in its amended returns for said years and in its return for the year 1929 it treated all drilling costs as capital items. It argues that in so far as its tax liability for the years 1925 to 1928, inclusive, is concerned, the accounting method to be used is immaterial, since both the original and amended returns for those years disclose net losses; that the

costs of footage drilling, like those for turnkey drilling, having been erroneously deducted as current expense, should be restored to capital. If by this it means that because turnkey drilling charges were erroneously charged to expense when they should have been capitalized, it is entitled to go back and charge to capital development expense for footage drilling which, under its option, it could charge to expense, we are unable to agree. As we have shown before, turnkey drilling charges are not within the option granted by the regulation and must be capitalized. Therefore, the only option it could exercise thereunder would be to deduct the footage drilling as a development expense or charge it to capital account. It chose to deduct it in each of the years 1925 to 1928, inclusive, and we think it exercised its option under the regulation by making its returns upon that basis for four successive years. It should not now be heard to say that it exercised such option when it filed its amended returns for those years in 1929. Such deductions may not now be capitalized to change the basis in determining gain or loss upon the sale of the properties in 1929.

The petitioner relies on *Sterling Oil & Gas Co.* v. *Lucas, supra,* as the authority in its favor. While it is true that the court in that case held that the taxpayer had not made an election as to the method to be used in treating its drilling costs, such decision was made upon facts most of which are absent in this case, and we do not think it is controlling. If any weight was given to the fact that no tax was assessed in that case, as here, we think it is entitled to no weight in this case, for the taxpayer consistently, over a period of four years, elected to charge off footage drilling costs and was apparently satisfied with the result. While no tax was assessable in the prior years, the change which the petitioner seeks results in an increased loss in each of the years 1927 and 1928, which loss becomes deductible in 1929, the year before us. We think the petitioner is now precluded by the regulation above set forth from making the change in its returns, and the action of the respondent is approved.

*Judgment will be entered for the respondent.*